AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
                                  ☐ SUPERSEDING

─── **OFFENSE CHARGED** ───

18 U.S.C. § 371; 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R.
§ 240.10b-5; 15 U.S.C. §§ 78j(b), 78ff; 15 U.S.C. § 77q(a), 77x;
18 U.S.C. § 1001(a)(1); 18 U.S.C. § 1001(a)(3); 18 U.S.C. § 1505;
18 U.S.C. § 2; 18 U.S.C. §§ 981(a)(1)(C), 982(a) & 28 U.S.C.
§ 2461(c)

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

**FILED**

MAY 18 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PENALTY:   See attached

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

─── **DEFENDANT - U.S** ───

Gregg Jaclin

DISTRICT COURT NUMBER

**CR17   0281 CRB**

─── **PROCEEDING** ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
   give name of court

☐ this person/proceeding is transferred from another district
   per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
   charges previously dismissed
   which were dismissed on motion
   of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW
DOCKET NO.
}

☐ this prosecution relates to a
   pending case involving this same
   defendant

MAGISTRATE
CASE NO.
}

☐ prior proceedings or appearance(s)
   before U.S. Magistrate regarding this
   defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form   BRIAN STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   Benjamin Kingsley

─── **DEFENDANT** ───

**IS NOT IN CUSTODY**
   Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
      summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction          ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
      If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes    If "Yes"
been filed?    ☐ No      give date
                         filed

**DATE OF**              Month/Day/Year
**ARREST**

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED**    Month/Day/Year
**TO U.S. CUSTODY**   ▶

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT          Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: 6/8/2017, 9:30 am     Before Judge: Duty Judge in SF

Comments:

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

FILED

MAY 18 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

CR17    0281  CRB

GREGG JACLIN,

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 371 - Conspiracy; 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5
- Fraud in Connection with Purchase and Sale of Securities; 15 U.S.C. §§ 78j(b),
78ff - False Filing Under the Securities Exchange Act of 1934; 15 U.S.C. §§ 77q(a),
77x - False Filing Under the Securities Act of 1933; 18 U.S.C. § 1001(a)(1) -
Scheme to Conceal Material Facts from a Government Agency; 18 U.S.C. § 1001(a)
(3) - False Writings to a Government Agency; 18 U.S.C. § 1505 - Obstructing
Proceedings of the Securities and Exchange Commission; 18 U.S.C. § 2 - Aiding
and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 982(a) & 28 U.S.C. § 2461(c) - Criminal
Forfeiture

A true bill.

_Karen Williams_

Foreman

Filed in open court this __18__ day of

May, 2017

_Karen L. Hom_                    KAREN L. HOM

JOSEPH C. SPERO                              Clerk
UNITED STATES MAGISTRATE JUDGE

Bail, $ __Summons for 6/8/2017__

## PENALTY SHEET ATTACHMENT

Count One:

    18 U.S.C. § 371 – Conspiracy

    Maximum penalties:  5 years of imprisonment (18 U.S.C. § 371)
                              $250,000 fine (18 U.S.C. § 3571(b)(3))
                              3 years of supervised release (18 U.S.C. § 3583(b)(2))
                              $100 special assessment (18 U.S.C. § 3013)

Count Two:

    15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 – Fraud in Connection with Purchase and Sale of Securities

    Maximum penalties:  20 years of imprisonment (15 U.S.C. § 78ff)
                                $5,000,000 fine (15 U.S.C. § 78ff)
                              3 years of supervised release (18 U.S.C. § 3583(b)(2))
                              $100 special assessment (18 U.S.C. § 3013)

Count Three:

    15 U.S.C. §§ 78j(b), 78ff – False Filing under the Securities Exchange Act of 1934

    Maximum penalties:  20 years of imprisonment (15 U.S.C. § 78ff)
                                $5,000,000 fine (15 U.S.C. § 78ff)
                              3 years of supervised release (18 U.S.C. § 3583(b)(2))
                              $100 special assessment (18 U.S.C. § 3013)

Count Four:

    15 U.S.C. §§ 77q(a), 77x – False Filing under the Securities Act of 1933

    Maximum penalties:  5 years of imprisonment (15 U.S.C. § 77x)
                                $10,000 fine (15 U.S.C. § 77x)
                              3 years of supervised release (18 U.S.C. § 3583(b)(2))
                              $100 special assessment (18 U.S.C. § 3013)

Count Five:

    18 U.S.C. § 1001(a)(1) – Scheme to Conceal Material Fact from a Government Agency

    Maximum penalties:  5 years of imprisonment (18 U.S.C. § 1001)
                            $250,000 fine (18 U.S.C. § 3571(b)(3))
                            3 years of supervised release (18 U.S.C. § 3583(b)(2))
                            $100 special assessment (18 U.S.C. § 3013)

Count Six:

    18 U.S.C. § 1001(a)(3) – False Writings to a Government Agency

    Maximum penalties:  5 years of imprisonment (18 U.S.C. § 1001)
                            $250,000 fine (18 U.S.C. § 3571(b)(3))
                            3 years of supervised release (18 U.S.C. § 3583(b)(2))
                            $100 special assessment (18 U.S.C. § 3013)

Counts Seven and Eight:

    18 U.S.C. § 1505 – Obstruction of Justice

    Maximum penalties:  5 years of imprisonment (18 U.S.C. § 1505)
                            $250,000 fine (18 U.S.C. § 3571(b)(3))
                            3 years of supervised release (18 U.S.C. § 3583(b)(2))
                            $100 special assessment (18 U.S.C. § 3013)

1   BRIAN J. STRETCH (CABN 163973)
    United States Attorney
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,              )   CASE NO. CR17  0281
                                           )                            CRB
12              Plaintiff,                 )
                                           )
13          v.                             )   VIOLATIONS: 18 U.S.C. § 371 – Conspiracy; 15
                                           )   U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 –
14  GREGG JACLIN,                          )   Fraud in Connection with Purchase and Sale of
                                           )   Securities; 15 U.S.C. §§ 78j(b), 78ff – False Filing
15              Defendant.                 )   under the Securities Exchange Act of 1934; 15 U.S.C.
                                           )   §§ 77q(a), 77x – False Filing under the Securities Act
16                                         )   of 1933; 18 U.S.C. § 1001(a)(1) – Scheme to Conceal
                                           )   Material Facts from a Government Agency; 18 U.S.C.
17                                         )   § 1001(a)(3) – False Writings to a Government
                                           )   Agency; 18 U.S.C. § 1505 – Obstructing Proceedings
18                                         )   of the Securities and Exchange Commission; 18
                                           )   U.S.C. § 2 – Aiding and Abetting; 18 U.S.C.
19                                         )   §§ 981(a)(1)(C), 982(a) & 28 U.S.C. § 2461(c) –
                                           )   Criminal Forfeiture
20                                         )
                                           )   SAN FRANCISCO VENUE
21  _____       )

22                              I N D I C T M E N T

23  The Grand Jury charges:

24          At all times relevant to this Indictment:

25                           Applicable Securities Laws

26          1.      The United States Securities and Exchange Commission ("SEC") was an independent

27  agency of the United States.  The SEC regulated the securities industry and enforced various securities

28  laws, including the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ("Securities Act"), and the Securities

    INDICTMENT

1  Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act").  Regulations promulgated by the SEC

2  defined and implemented the requirements of the statutes.  Under the Securities Act and its

3  implementing regulations, a transaction offering or selling a security that used any means or instruments

4  of interstate commerce or the mails was required either to be registered with the SEC or to fall under an

5  exemption.  To register an offer or sale of securities, companies were required to file a "registration

6  statement."  The SEC provided various forms for registration statements, including, as relevant to this

7  Indictment, Form S-1.  SEC Rule 144 provided a commonly used exemption from registration, a part of

8  which applied to the sale of securities by a person who was not an "affiliate" of the company.  17 C.F.R.

9  § 230.144(k).

10       2.       Under the Exchange Act and its implementing regulations, reporting companies were

11  generally required to file with the SEC both periodic disclosures (on Forms 10-K and 10-Q) and special

12  disclosures (on Form 8-K), when a material change occurred, to provide up-to-date information about

13  the companies.

14       3.       EDGAR was an electronic filing system maintained by the SEC for companies to file

15  registration statements, 10-Ks, 10-Qs, and 8-Ks (collectively, "public filings").  Public filings submitted

16  to EDGAR were available to anyone with access to the Internet and remained available indefinitely.

17       4.       The Securities Act and the Exchange Act, and their implementing regulations, required

18  that public filings contained particular disclosures or types of information.  Among the categories of

19  information required by these laws was substantial information about the individuals who, in various

20  ways, were deemed to control public companies.  Specifically, under the Securities Act, registration

21  statements were required to contain the names "of the directors or persons performing similar

22  functions"; "of the promoters in the case of a business to be formed, or formed within two years prior to

23  the filing of the registration statement"; and "of all persons, if any, owning of record or beneficially, if

24  known, more than 10 per centum of any class of stock of the issuer, or more than 10 per centum in the

25  aggregate of the outstanding stock of the issuer."  15 U.S.C.  § 77aa(4), (6).  Under the Exchange Act,

26  individuals were required to file disclosures if they obtained, directly or indirectly, beneficial ownership

27  of more than five percent of any equity security class registered under 15 U.S.C. § 78*l*.  15 U.S.C.

28  § 78m(d).

INDICTMENT                                    2

5.      Additionally, SEC Regulation S-K required that public filings under both the Exchange Act and the Securities Act contain further information regarding control of a company.  17 C.F.R. § 229.10.  These requirements included, but were not limited to, the following:

- "describe briefly any arrangement or understanding between [any director or executive officer] and any other person(s) (naming such person(s)) pursuant to which he was or is to be selected as a [director or officer]," 17 C.F.R. § 229.401(a)–(b);

- to provide information regarding any person who is known to the registrant to be the owner, beneficial or otherwise, of more than five percent of any class of the registrant's voting securities, 17 C.F.R. § 229.403(a);

- if the company had a promoter in the last five years, certain filings, including Form S-1 registration statements, were required to disclose the name and various information about any promoter, 17 C.F.R. § 229.404(c)(1); and

- to disclose the name of and various information about "any person who acquired control of a registrant that is a shell company," 17 C.F.R § 229.404(c)(2).

6.      The Securities Act and implementing regulations imposed additional requirements on "blank check" companies.  15 U.S.C. § 77g(b); *see also* 17 C.F.R. § 230.419.  Both the Securities Act and the Exchange Act and their implementing regulations imposed additional requirements on "shell companies."  17 C.F.R. §§ 230.405, 240.12b-2.  The cover pages for Forms 10-Q and 10-K included check boxes in which a company disclosed whether it was a "shell company" under the regulations.

7.      SEC regulations also required the provision of information not explicitly prescribed by other rules.  Specifically, the regulations required that, "[i]n addition to the information expressly required to be included in a [registration statement, statement, or report], there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading." 17 C.F.R. §§ 230.408, 240.12b-20.

8.      The SEC reviewed the registration statements of companies wishing to register a public offering of their securities, to ensure compliance with the Securities Act and its implementing regulations.  The SEC possessed the authority to declare a registration statement effective, at which point the securities transactions registered in the statement could be lawfully completed.  In making this

INDICTMENT                                                      3

1    determination, the SEC regularly issued comment letters on proposed registration statements filed by

2    companies. These comment letters sought further information or questioned particular information

3    provided in the registration statements, and companies were required to respond to these letters in order

4    for the SEC to declare their proposed registration statements effective. The SEC also, among other

5    things, investigated possible violations of federal securities laws and regulations and brought

6    administrative and civil actions to enforce those laws and regulations.

7                                              Relevant Individuals

8            9.        Defendant Gregg JACLIN resided in New Jersey. JACLIN was an attorney who

9    practiced law in New Jersey.

10          10.       I.H. resided in Santa Monica, California.

11          11.       J.N. resided in the Northern District of California.

12          12.       M.H. resided in Florida. M.H. was an attorney who practiced law in Florida.

13          13.       S.W. resided, at relevant times, in the Northern District of California.

14          14.       C.A. resided in various places, including in California.

15          15.       For most of the relevant time period, JACLIN practiced law at Anslow & Jaclin, a law

16   firm located in New Jersey that specialized in securities work. JACLIN ran Anslow & Jaclin with

17   another partner. For approximately one month in or about September 2011, Anslow & Jaclin merged

18   with another firm, and JACLIN practiced at that firm until the merger was dissolved and Anslow &

19   Jaclin was relaunched as its own entity. Anslow & Jaclin dissolved permanently in or about September

20   2013. Beginning at or about that time, JACLIN practiced law as a partner at a different law firm in New

21   Jersey.

22          16.       At each firm, JACLIN supervised other attorneys, paralegals, and other staff at the firm.

23   At Anslow & Jaclin, JACLIN did not report to anyone with respect to his practice.

24                                        JACLIN's Securities Law Practice

25          17.       For the entire relevant time period, JACLIN specialized in representing very small

26   companies that were or wished to become publicly traded companies. When public, these companies

27   were often referred to as "penny stocks." JACLIN utilized what he referred to as the "self-filing"

28   model, through which he guided companies from their incorporation to their sale as publically traded

INDICTMENT                                          4

companies.  As part of this model, JACLIN, through his firm, prepared and filed documentation to: (1) incorporate the company; (2) conduct a "private placement offering," where the stock of the company was offered to a limited group of investors; (3) register the sales of shares to the investors with the SEC, by filing a proposed Form S-1 registration statement, responding to the SEC's comments on S-1s, and filing amended S-1s in response to those comments or for other reasons; (4) filing continued disclosures, including 10-Qs, 10-Ks, and 8-Ks, for the company; (5) working with a "market maker" to obtain clearance from the Financial Industry Regulatory Authority ("FINRA") to publish stock price quotations for the company on an "over the counter" marketplace, including by submitting FINRA Form 211; and (6) working with a market maker and stock transfer agent to obtain "DTC eligibility," referring to the Depository Trust Company, which allowed the settling of securities trades electronically.  Once this process was completed, JACLIN often aided his client companies in finding a buyer and guided his client companies through a "reverse merger," wherein JACLIN's client company was, in effect, sold to a private company with ongoing business as a method of taking that private company public.  JACLIN acted as a broker in some of these transactions, and in some cases, continued to represent the successor company.

18.     Anslow & Jaclin was paid a set fee for the self-filing process, from incorporation to being publicly traded, and then was paid an additional amount for finding and putting into effect the reverse merger.

<u>Relevant Shell Company Entities</u>

19.     Eastern Services Holdings, Inc. ("Eastern Services"), was a Nevada corporation. Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

20.     New Image Concepts, Inc. ("New Image"), was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

21.     FormulaWon, Inc. ("FormulaWon"), was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

22.     PR Complete Holdings, Inc. ("PR Complete"), was a Nevada corporation. Anslow & Jaclin served as company counsel and prepared SEC filings for the company.  PR Complete entered into a reverse merger on or about December 11, 2009, and the resulting company was YesDTC Holdings,

INDICTMENT                                    5

Inc. ("YesDTC"), which was based in the Northern District of California.  YesDTC was purchased by a group including J.N.  The stock of YesDTC was subject to market manipulation in 2011.

23.     Ciglarette, Inc. ("Ciglarette"), was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

24.     Resume in Minutes, Inc. ("Resume in Minutes"), was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

25.     Rapid Holdings, Inc. ("Rapid Holdings"), was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

26.     Movie Trailer Galaxy, Inc. ("Movie Trailer Galaxy"), was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

27.     Health Directory, Inc., ("Health Directory") was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

28.     Comp Services, Inc., ("Comp Services") was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

29.     Counseling International, Inc., ("Counseling International") was a Nevada corporation.  Anslow & Jaclin served as company counsel and prepared SEC filings for the company.

### The Scheme

30.     Beginning at a date unknown, but no later than March 2008, and continuing through December 2013, JACLIN and I.H., by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, by employing devices, schemes, and artifices to defraud; by making and causing to be made untrue statements of material fact and omitting to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers of securities, which scheme is described further below.  Further, JACLIN and I.H. knowingly made or caused to be made false and misleading filings and statements to the SEC and the public, schemed to conceal information from the SEC, omitted to include information that they knew were required to be included in SEC filings, and

INDICTMENT                                     6

1    corruptly obstructed the proceedings of the SEC.

2        31.     JACLIN and I.H. manufactured shell companies to sell to other individuals who used

3 those shell companies as publicly traded vehicles for market manipulation schemes.  Together, JACLIN

4 and I.H. created, took public, and sold or attempted to sell approximately ten shell companies with little

5 or no ongoing business to individuals who purchased the companies and reverse-merged them into

6 existing private companies.  These companies included New Image Concepts, FormulaWon, PR

7 Complete Holdings, Ciglarette, Resume in Minutes, Rapid Holdings, Movie Trailer Galaxy, Health

8 Directory, Comp Services, and Counseling International.  JACLIN and I.H. were able to successfully

9 sell eight of the companies, for a total of approximately $2.25 million, to purchasers whom JACLIN and

10 I.H. knew would sell the shares of the companies to the public.  These companies were then, in some

11 instances, the subject of market manipulation schemes.  Two of the companies, Comp Services and

12 Counseling International, were the subject of SEC enforcement action before they could be sold.  Prior

13 to creating these ten companies, JACLIN and I.H. also took an eleventh company, Eastern Services

14 Holdings, which was not incorporated by JACLIN and I.H., through much of JACLIN's self-filing

15 process.

16        32.     JACLIN and I.H. had separate roles in the scheme.  I.H. created, controlled, financed, and

17 owned the companies.  JACLIN, through the law firms at which he worked, represented the companies

18 through all necessary stages of the process, from incorporation through reverse-merger, and oversaw the

19 preparation and filing of legally required documents for the companies.  JACLIN also found the buyers

20 for many of the companies.

21        33.     In each case, I.H., with JACLIN's knowledge and/or at his suggestion and direction,

22 found nominee CEOs, who, on paper, served as majority shareholders and sole directors of the

23 companies, but who exerted no control over the companies.  Instead, the nominee CEOs were paid by

24 and took all of their direction from I.H., and were not involved in any substantive manner with the

25 companies beyond signing documents as directed by I.H.  I.H., also with JACLIN's knowledge or at his

26 suggestion and direction, found or caused others to find nominee minority shareholders, for whom I.H.

27 fronted the money for their shares.  I.H., with JACLIN's knowledge or at his suggestion and direction,

28 drafted fraudulent business plans for the companies, purporting that the companies had real plans to

INDICTMENT                                 7

1 | engage in business and grow.  In actuality, the companies were created and maintained for the sole

2 | purpose of being sold as a shell to purchasers who, either individually or as a group, wished to control

3 | all of the shares of the company.  The companies were then used as a vehicle for a reverse merger.

4 |     34.    Together, JACLIN and I.H., or those working at JACLIN's direction, prepared numerous

5 | fraudulent documents to create these companies, register their shares for public sale, and sell the

6 | companies in a reverse-merger transaction.  These documents included, but were not limited to,

7 | incorporation documents, S-1 registration statements, 10-Qs, 10-Ks, FINRA Form 211s and supporting

8 | documentation, and attorney opinion letters.  JACLIN and I.H. knew that these documents contained

9 | material false or misleading statements, as well as omissions where there was a duty to disclose.  These

10 | false or misleading statements included, but were not limited to, reporting the nominee CEOs/directors

11 | and shareholders as the actual CEOs/directors and shareholders; stating that the shareholders had

12 | purchased their shares in a private offering, were selling the shares for their own account in the

13 | registered offering, and were not affiliated with any of the shell company's officers, directors,

14 | promoters, or any beneficial owner of 10% or more of the companies' securities; incorporating the

15 | fraudulent business plans of the companies and falsely describing the companies' plans; stating that the

16 | companies were not shell companies or not blank check companies, as defined by the securities laws;

17 | and offering the opinion that particular shares of the companies were freely tradeable under securities

18 | laws.  The documents fraudulently omitted to disclose, despite the existence of a duty to do so, I.H.'s

19 | role as the promoter and control person of the companies and the beneficial owner of the companies'

20 | shares; I.H.'s role in selecting the nominees, his arrangements with them, and his role in directing all of

21 | their actions or simply taking action on their behalf; and the true purpose of the companies.

22 |     35.    The misrepresentations, promises, and omissions in these documents were disseminated

23 | in various ways, including but not limited to, being filed publicly with the SEC on the EDGAR system,

24 | where they were reviewed by the SEC and where could be viewed by future investors in the companies

25 | or their successor public companies following the reverse mergers; sent by letter to the SEC; or

26 | submitted to other entities, including FINRA, market makers, transfer agents, auditors, or DTC.  They

27 | were material to the various recipients.  As a result of these and other material misrepresentations,

28 | promises, and omissions made or directed to be made by JACLIN and I.H., the SEC allowed the

INDICTMENT         8

registration statements of the companies to become effective; the shares of the companies became publicly tradeable, on over-the-counter marketplaces; I.H. was able to sell the shares of these companies, with JACLIN's assistance, to other individuals, in reverse merger transactions; and as I.H. and JACLIN knew they would, these other individuals were then able to sell the shares of these companies to the public, in some instances in market-manipulation schemes. To later investors in the companies that resulted from the reverse mergers, investments in the companies appeared more desirable, as their public filings purported to have legitimate histories of actual business and approximately 25 to 35 prior individual shareholders. In reality, they were simply publicly traded shell and/or blank check companies, all controlled by the same person, I.H., who had a history of involvement with shell companies that were eventually used in market manipulation.

36.     Additionally, JACLIN, I.H., and the purchasers of the companies structured the sale transactions to make it appear that I.H.'s various nominees were selling to various other individual shareholders, when in reality, I.H. was selling shares directly to one individual or a control group of individuals. This control structure facilitated later market-manipulation schemes, and JACLIN and I.H. knew that the purchasers wanted all of the freely trading shares of the resulting company to be in friendly, controllable hands.

37.     As further part of the scheme to defraud, JACLIN and I.H. concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done in furtherance of the scheme, including by:

        a.     hiding I.H.'s true role and the true purpose of the companies in all public filings and in communications with other entities and regulators;

        b.     directing the nominee CEOs to open bank accounts (funded by I.H.) for the companies, and directing those CEOs to pay bills out of the accounts;

        c.     making payment to I.H. for the sale of the shell companies through a "shareholder representative," which was typically an overseas company controlled by I.H.;

        d.     obtaining blank share purchase agreements for the anticipated reverse merger from the nominee shareholders at the same time that these nominees made their "investment" (which was actually funded by I.H.), so as to minimize the difficulty of

finding those individuals again and obtaining their signature for the later sale;

e.    deleting emails that showed direct communications between I.H. and JACLIN or his staff, including by arranging for Anslow & Jaclin's IT provider to delete records of communications between I.H. and employees of Anslow & Jaclin;

f.    agreeing that I.H. should stop emailing Anslow & Jaclin attorneys, including JACLIN, directly, and instead that I.H. should create email accounts for the nominee CEOs, and either email Anslow & Jaclin from those accounts or direct those CEOs to email Anslow & Jaclin from those accounts;

g.    transferring the proceeds of the sale of a shell company from the Anslow & Jaclin trust account to a nominee CEO and directing the nominee CEO to pay some of those funds back to Anslow & Jaclin for legal services;

h.    in public filings and in response to direct questions in letters from the SEC's Division of Corporate Finance in late 2012 and January 2013, falsely stating that the nominee CEO of Counseling International had resigned because she was pregnant and that no one else other than counsel for Counseling International was involved in arranging for her replacement, and failing to disclose that I.H. was involved in arranging for her replacement;

i.    directing and coaching nominee CEOs to give false testimony in response to subpoenas issued by SEC offices in San Francisco and Los Angeles; and

j.    coordinating their responses to the SEC's investigation regarding Counseling International, and, in the case of JACLIN, testifying falsely regarding his role and his knowledge of I.H.'s role in the SEC's investigation of Counseling International, and giving false statements to the SEC, the Federal Bureau of Investigation, and the United States Attorney's Office.

COUNT ONE:   (18 U.S.C. § 371 – Conspiracy)

38.    The factual allegations of Paragraphs 1 through 37 are re-alleged and incorporated as if fully set forth here.

39.    Beginning at a date unknown, but no later than March 2008, and continuing through

INDICTMENT                                        10

December 2013, in the Northern District of California and elsewhere, the defendant,

GREGG JACLIN,

and another person or persons known and unknown, did knowingly and willfully conspire to commit offenses against the United States, namely, (a) fraud in connection with the offer and sale, and the purchase and sale, of securities, in violation of Title 15, United States Code, Section 78j(b), 78ff, 77q(a), and 77x and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) the making of false and misleading statements and omissions of material fact in reports and documents required to be filed under the Securities Exchange Act of 1934 and the rules and regulations thereunder, in violation of Title 15, United States Code, Section 78j(b) and 78ff; (c) the making of false and misleading statements of material fact and omissions of material facts in reports and documents required to be filed under the Securities Act of 1933, in violation of Title 15, United States Code, Sections 77q(a) and 77x; (d) the falsification, concealment, and cover up by trick, scheme, and device of a material fact in a matter within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001(a)(1); (e) the making and use of false writings and documents, containing material false, fictitious, and fraudulent statements and entries, in a matter within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001(a)(3); and (f) the corrupt influence, obstruction, and impediment of the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States.

OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

40.    In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Northern District of California, and elsewhere:

       a.     On or about November 7, 2009, I.H. sold PR Complete Holdings to a group that included J.N.;

       b.     On or about November 29, 2011, JACLIN and I.H. filed, or caused to be filed, the Form 10-K for the fiscal year ended August 31, 2011, for Movie Trailer Galaxy, and accompanying documents;

c.    On or about August 31, 2012, JACLIN emailed I.H. and others, regarding the sale of Movie Trailer Galaxy;

d.    On or about September 3, 2012, JACLIN emailed I.H. and others, regarding the sale of Movie Trailer Galaxy;

e.    On or about September 3, 2012, JACLIN emailed S.W. and others, regarding the filing of the Post-Effective Amendment No. 1 to the Form S-1 registration statement for Movie Trailer Galaxy;

f.    On or about September 4, 2012, JACLIN, I.H., and others filed, or caused to be filed, Post-Effective Amendment No. 1 to the Form S-1 registration statement for Movie Trailer Galaxy, and accompanying documents;

g.    Between on or about September 14, 2012, and September 19, 2012, JACLIN emailed S.W.;

h.    On or about September 19, 2012, JACLIN caused a wire transfer to be sent from Anslow & Jaclin to Movie Trailer Galaxy's bank account;

i.    In or about September 2012, I.H. arranged for C.A. to travel to Los Angeles, California, to meet with I.H. regarding C.A.'s scheduled testimony in a proceeding of the SEC in San Francisco, California;

j.    On or about September 29, 2012, JACLIN and I.H. spoke via telephone regarding C.A.'s upcoming testimony in a proceeding of the SEC in San Francisco;

k.    On or about September 30, 2012, JACLIN and I.H. spoke via telephone regarding C.A.'s upcoming testimony in a proceeding of the SEC in San Francisco;

l.    On or about October 1, 2012, I.H. travelled to San Francisco;

m.    On or about October 1, 2012, I.H. met with C.A. and M.H., in San Francisco;

n.    On or about October 1, 2012, JACLIN sent a text message to M.H., who was in San Francisco; and

o.    On or about October 2, 2012, JACLIN sent a text message to M.H., who was in San Francisco.

All in violation of Title 18, United States Code, Section 371.

INDICTMENT                                      12

1   COUNT TWO:          (15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2 – Fraud
                                   in Connection with Purchase and Sale of Securities and Aiding and
2                                    Abetting)

3       41.    Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and

4 incorporated as if fully set forth here.

5       42.    Beginning at a date unknown, but no later than March 2008, and continuing through

6 December 2013, in the Northern District of California and elsewhere, the defendant,

7                                  GREGG JACLIN,

8 and others known and unknown, did knowingly and willfully, directly and indirectly, by the use of the

9 means and instrumentalities of interstate commerce, the mails, and the facilities of national securities

10 exchanges, use and employ manipulative and deceptive devices and contrivances in connection with the

11 purchase and sale of securities issued by Movie Trailer Galaxy, in violation of Title 17, Code of Federal

12 Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making

13 and causing Movie Trailer Galaxy, to make untrue statements of material fact and omitting to state facts

14 necessary in order to make the statements made, in light of the circumstances under which they were

15 made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and

16 would operate as a fraud and deceit upon purchasers of the securities of Movie Trailer Galaxy.

17       All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of

18 Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

19   COUNT THREE:        (15 U.S.C. §§ 78j(b), 78ff and 18 U.S.C. § 2 – False Filing under the
                                   Exchange Act and Aiding and Abetting)
20

21       43.    Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and

22 incorporated as if fully set forth here.

23       44.    On or about November 29, 2011, in the Northern District of California and elsewhere, the

24 defendant,

25                                  GREGG JACLIN,

26 in a Form 10-K filed with the SEC for the fiscal year ending August 31, 2011, did knowingly and

27 willfully make and cause Movie Trailer Galaxy, to (a) make material untrue statements of material fact;

28 (b) omit to state material facts necessary to make the statements made not misleading; and (c) omit to

INDICTMENT                    13

state material facts required to be stated in a Form 10-K under the Exchange Act and its regulations and rules.

45.     Specifically, the Form 10-K:

      a.     Falsely stated that Movie Trailer Galaxy, "did not have any plan, arrangement, or understanding to engage in a merger or acquisition with any other entity";

      b.     Omitted to disclose that I.H. was a control person of Movie Trailer Galaxy;

      c.     Omitted to disclose that I.H. was an owner (beneficial or otherwise) of greater than 5% of the company's shares;

      d.     Omitted to disclose that I.H. had been a promoter of Movie Trailer Galaxy, in the prior five years; and

      e.     Omitted to disclose the arrangement and understanding between I.H. and S.W. through which she became sole director and executive officer of Movie Trailer Galaxy.

All in violation of Title 15, United States Code, Sections 78j(b), 78m(d), and 78ff; Title 17, Code of Federal Regulations, Sections 229.10, 229.401, 229.403, 229.404, 240-10b-5, and 240-12b-20, and Title 18, United States Code, Section 2.

COUNT FOUR:        (15 U.S.C. §§ 77q(a), 77x, and 18 U.S.C. § 2 – False Filing under the Securities Act and Aiding and Abetting)

46.     Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and incorporated as if fully set forth here.

47.     On or about September 4, 2012, in the Northern District of California and elsewhere, the defendant,

GREGG JACLIN,

and others known and unknown, willfully and knowingly, in a Form S-1 registration statement filed by Movie Trailer Galaxy under the Securities Act of 1933, did make and cause to be made untrue statements of material fact, and omit to state and cause to be omitted material facts required to be stated therein and necessary to make the statements made not misleading, including that:

INDICTMENT                    14

a.   Movie Trailer Galaxy, "did not have any plan, arrangement, or understanding to engage in a merger or acquisition with any other entity";

b.   "[t]here are no agreements between the company and any selling shareholder pursuant to which the shares subject to this registration statement were issued";

c.   "[t]o our knowledge, none of the selling shareholders or their beneficial owners . . . has had a material relationship with us other than as a shareholder at any time within the past three years";

d.   "[t]he selling stockholders are selling shares of common stock covered by this prospectus for their own account";

e.   in the table listing "SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT," stating S.W.'s name and address under "each person known to us to own more than 5% of our outstanding shares of common stock";

f.   "[n]one of the investors are affiliated with any of our directors, officers or promoters or any beneficial owner of 10% or more of our securities";

g.   in the opinion letter signed by JACLIN, "the shares of common stock to be sold by the selling shareholders have been duly authorized and are legally issued, fully paid and non-assessable";

h.   Omitted to disclose that I.H. was a control person of Movie Trailer Galaxy;

i.   Omitted to disclose that I.H. was an owner (beneficial or otherwise) of greater than 5% and greater than 10% of the company's shares;

j.   Omitted to disclose that I.H. had been a promoter of Movie Trailer Galaxy, in the prior five years; and

k.   Omitted to disclose the arrangement and understanding between I.H. and S.W. through which she became sole director and executive officer of Movie Trailer Galaxy.

All in violation of Title 15, United States Code, Sections 77q(a), 77x, 77aa, and 2; Title 17, Code of Federal Regulations, Sections 229.10, 229.401, 229.403, 229.404, and 230.408, and Title 18, United

INDICTMENT                                          15

States Code, Section 2.

<u>COUNT FIVE:</u>    (18 U.S.C. §§ 1001(a)(1) and 2 – Scheme to Conceal Material Fact from a Government Agency and Aiding and Abetting)

48.    Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and incorporated as if fully set forth here.

49.    Beginning at a date unknown, but no later than March 2008, and continuing through December 2013, in the Northern District of California and elsewhere, the defendant,

GREGG JACLIN,

and others known and unknown, did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the executive branch of the Government of the United States;  specifically, falsifying, concealing, and covering up by trick, scheme, and device, from the SEC, the following material facts, which there was a legal duty to disclose:

a.    I.H.'s true role, as control person, owner (beneficial or otherwise), financer, affiliate, and promoter, with the public shell companies JACLIN and I.H. created and attempted to create;

b.    JACLIN and I.H.'s plan and intention to sell in a reverse merger the public shell companies that they created and attempted to create; and

c.    JACLIN and I.H.'s sales of the shell companies to single control individuals and control groups who were not disclosed in the public filings of the companies.

All in violation of Title 18, United States Code, Section 1001(a)(1) and 2.

<u>COUNT SIX:</u>    (18 U.S.C. §§ 1001(a)(3) and 2 – False Writings to a Government Agency and Aiding and Abetting)

50.    Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and incorporated as if fully set forth here.

51.    On or about September 4, 2012, in the Northern District of California and elsewhere, the defendant,

GREGG JACLIN,

INDICTMENT    16

1    and others known and unknown, did willfully and knowingly make and use a material false, fictitious,

2    and fraudulent document knowing the same to contain a material false, fictitious, and fraudulent

3    statement and entry, in a matter within the jurisdiction of the executive branch of the Government of the

4    United States, by the filing with the SEC of a Form S-1 for Movie Trailer Galaxy, with an attached

5    opinion letter, which contained the material false, fictitious, and fraudulent statements, including that:

6            a.    Movie Trailer Galaxy, was not a "shell company (as defined by Rule 12b-2 of the

7                Act)";

8            b.    Movie Trailer Galaxy "did not have any plan, arrangement, or understanding to

9                engage in a merger or acquisition with any other entity";

10           c.    "[t]here are no agreements between the company and any selling shareholder

11               pursuant to which the shares subject to this registration statement were issued";

12           d.    "[t]o our knowledge, none of the selling shareholders or their beneficial

13               owners . . . has had a material relationship with us other than as a shareholder at

14               any time within the past three years";

15           e.    "[t]he selling stockholders are selling shares of common stock covered by this

16               prospectus for their own account";

17           f.    in the table listing "SECURITY OWNERSHIP OF CERTAIN BENEFICIAL

18               OWNERS AND MANAGEMENT," stating S.W.'s name and address under

19               "each person known to us to own more than 5% of our outstanding shares of

20               common stock";

21           g.    "[n]one of the investors are affiliated with any of our directors, officers or

22               promoters or any beneficial owner of 10% or more of our securities"; and

23           h.    in the opinion letter signed by JACLIN, "the shares of common stock to be sold

24               by the selling shareholders have been duly authorized and are legally issued, fully

25               paid and non-assessable."

26       All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

27   //

28   //

INDICTMENT                                    17

COUNT SEVEN:                 (18 U.S.C. §§ 1505 and 2 – Obstruction of Proceedings before the
                             Securities and Exchange Commission and Aiding and Abetting)

52.     Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and

incorporated as if fully set forth here.

53.     Beginning in or about November 2008, and continuing through in or about October 2012,

in the Northern District of California and elsewhere, the defendant,

GREGG JACLIN,

and others known or unknown, willfully and knowingly corruptly influenced, obstructed, and impeded,

and aided and abetted others to corruptly influence, obstruct, and impede, the due and proper

administration of the law under which a pending proceeding was being had before a department and

agency of the United States, namely, the SEC and its review and investigation of PR Complete Holdings

and YesDTC, in violation of Title 18, United States Code, Sections 1505 and 2.

COUNT EIGHT:                 (18 U.S.C. §§ 1505 and 2 – Obstruction of Proceedings before the
                             Securities and Exchange Commission and Aiding and Abetting)

54.     Paragraphs 1 through 37 and Paragraph 40 of this Indictment are re-alleged and

incorporated as if fully set forth here.

55.     Beginning in or about August 2012, and continuing through in or about January 2016, in

the Northern District of California and elsewhere, the defendant,

GREGG JACLIN,

and others known or unknown, willfully and knowingly corruptly influenced, obstructed, and impeded,

and aided and abetted others to corruptly influence, obstruct, and impede, the due and proper

administration of the law under which a pending proceeding was being had before a department and

agency of the United States, namely, the SEC and its review and investigation of Counseling

International, in violation of Title 18, United States Code, Sections 1505 and 2.

FORFEITURE ALLEGATION:       (18 U.S.C. §§ 981(a)(1)(C), 982(a) & 28 U.S.C. § 2461(c) –
                             Criminal Forfeiture)

56.     All of the allegations contained in this Indictment are re-alleged and by this reference

fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18,

United States Code, Sections 981(a)(1)(C) and 982(a), and Title 28, United States Code, Section

INDICTMENT                                          18

1 | 2461(c).

2 | 57. Upon a conviction for any of the offenses alleged in Counts One and Two of this

3 | Indictment, the defendant,

4 | GREGG JACLIN,

5 | shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C.

6 | § 2461(c) all property constituting, and derived from, proceeds the defendants obtained directly and

7 | indirectly as the result of those violations, including but not limited to a forfeiture money judgment of

8 | not less than $2.25 million, representing the amount of proceeds obtained as a result of the offenses and

9 | scheme to defraud alleged in Counts One and Two.

10 | 58. If any of the aforementioned property, as a result of any act or omission of the

11 | defendants,

12 | a.   cannot be located upon the exercise of due diligence;

13 | b.   has been transferred or sold to, or deposited with, a third person;

14 | c.   has been placed beyond the jurisdiction of the Court;

15 | d.   has been substantially diminished in value; or

16 | e.   has been commingled with other property that cannot be divided without difficulty;

17 | any and all interest the defendants have in other property shall be vested in the United States and

18 | forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

19 | //

20 | //

21 | //

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 |

INDICTMENT                                    19

1      All in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a); Title 28, United

2  States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

3  DATED:                                       A TRUE BILL

4

5                 5|18|17

6                                         FOREPERSON

7  BRIAN J. STRETCH
   United States Attorney

8

9

10  ELISE BECKER
    Deputy Chief, Criminal Division

11

12

13  (Approved as to form:                )

14                      AUSA KINGSLEY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT                        20